**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ROY G. HICKS | : | |
| Plaintiff | : | |
| v | : | Civil Action No. JFM-03-3644 |
| CASE MANAGER ROACH, *et al.* | : | |
| Defendants | : | |

o0o

## MEMORANDUM

This civil rights action, filed December 19, 2003, concerns plaintiff's allegations that he has been the subject of several attempts on his life by fellow inmates at the behest of correctional officers in retaliation for his cooperation in preventing a prison riot.  As relief, plaintiff seeks transfer to another prison.  Defendants have filed a Motion to Dismiss or for Summary Judgment alleging that plaintiff has not exhausted his administrative remedies and that he is not entitled to a transfer.  Paper No. 42.  Plaintiff, by his attorney, has filed a Response to the motion which includes plaintiff's affidavit.  Paper No. 72.  Defendants filed a Reply and assert, *inter alia*, that plaintiff's affidavit should be stricken as it is "blatantly hostile, wholly unbelievable, and [is] replete with inadmissible hearsay and conjecture."  Paper No. 76.  Plaintiff has filed an opposition to the motion to strike.  Paper No. 77.  Also pending in this case are plaintiff's Motions for Injunctive Relief, seeking a transfer.  Papers No. 25, 32 and 37.

**Background**

Plaintiff alleges that his current predicament began in 1993 while he was incarcerated at the Maryland Penitentiary.  He claims that correctional officers there placed a contract on his life and, as a result, his throat was cut.  Defendants do not dispute that plaintiff's throat was cut, but point out that at the time of the incident plaintiff claimed that unnamed inmates were trying to

kill him. Paper No. 42 at Ex. 2. Defendants submit institutional records prepared in close proximity to the incident which reflect that plaintiff was found lying in bed, soaked in blood and that a suicide letter was found in his cell. *Id*. at Ex. 3. Plaintiff was then placed on involuntary protective custody and transferred to the Maryland House of Correction Annex (MHC-Annex) for purposes of remaining on long term protective custody status. *Id*. Plaintiff maintains that the persons responsible for cutting his throat have subsequently made themselves known to him and have again threatened his life.

Plaintiff next alleges that while he was incarcerated at Roxbury Correctional Institution (RCI) he provided officials there with information regarding an impending riot being planned by a prison gang known as the Black Guerilla Family (BGF). According to plaintiff, he loaned his typewriter to another inmate and when he went to retrieve it, discovered that it had been dismantled for purposes of fashioning weapons to be used in the riot. Plaintiff alleges that Officer Alexander, a correctional officer at RCI, knew about the BGF plan and discouraged him from reporting the information to authorities. Defendants admit that plaintiff was interviewed on October 8, 2001, and that he provided investigating officers with the names of several inmates whom he claimed were members of the BGF gang involved in the plan to stage a riot. Paper No. 42 at Ex. 1. Because plaintiff provided that information to staff, he was transferred to Maryland Correctional Training Center (MCTC) on October 24, 2001. *Id*.

Plaintiff alleges that while incarcerated at MCTC, he was threatened by inmate Paul Coleman and that a correctional officer who was a lieutenant witnessed the threat. Paper No. 72 at Ex. A. Plaintiff claims that in spite of the known threat he was moved to a cell on the same tier as Coleman. *Id.* He alleges that he became fearful that both the BGF and correctional

2

officers at MCTC were planning to harm him. *Id*. Plaintiff was then assigned to protective custody and subsequently transferred to Western Correctional Institution (WCI). *Id*.

Upon his arrival at WCI, Plaintiff alleges he was assaulted by inmate Michael Powell, whom he asserts is listed as one of his enemies. *Id*. Plaintiff asserts that correctional staff alerted Powell of his transfer to WCI in order to facilitate the assault. *Id*. Defendants claim that plaintiff and Powell never crossed paths at WCI because they are documented enemies. Paper No. 42 at Ex. 1. Plaintiff accuses Defendant Roach of telling Powell that plaintiff had listed him as an enemy and that Powell was paid in cigarettes and money by correctional officers to attack him. Paper No. 72 at Ex. A. Plaintiff further asserts that the attack was arranged as a retaliation measure for information supplied by plaintiff at RCI, implicating Officer Alexander in the scheme to permit a riot to occur. *Id*.

Plaintiff claims that he continues to suffer assaults at the hands of other inmates at WCI whom he claims are assisted by correctional staff. Plaintiff asserts that Defendant Broadwater allowed his cell door to remain open longer than usual so that inmate Melvin McAllister could enter his cell and assault him. *Id*. Plaintiff also claims he was stabbed by another inmate, whom he can not identify, on April 11, 2004. *Id*. He further claims that Defendant Shreve knows the identity of his assailant and is preventing his transfer to another institution in order to insure future acts of retaliation. *Id*.

Plaintiff, who is confined to a wheelchair, also claims that he was assaulted by Defendant Swanger. He claims that Officer Swanger came from behind him and tipped the chair over so that plaintiff fell to the floor. *Id*. Defendants deny that the incident occurred. Paper No. 42.

Plaintiff continues to claim that his physical safety is at risk as a result of being

3

incarcerated at WCI. Plaintiff was offered an interstate transfer to North Dakota. Plaintiff, however, declined the opportunity to be transferred to North Dakota because he believes he would be no safer there. Paper No. 72 at Ex. A.

**Motion to Strike**

Defendants take umbrage with plaintiff's affidavit, asserting that it is "blatantly hostile, wholly unbelievable, and replete with inadmissible hearsay and conjecture." Paper No. 74 at p. 4; Paper No. 76. They also take issue with the use of less-than-erudite language in the affidavit, specifically the phrase "up the wazoo"[1] and the term "hillbillies."[2]  In opposing the Motion to Strike, plaintiff points out that there has been no discovery in this case, and that inmate witnesses are not cooperating with counsel's investigatory efforts. Paper No. 77.  As a result, plaintiff is placed in a position where he must report the statements made by others to him, as well as his interpretation of those statements, in the course of events relevant to his claims. *Id*.

Under Fed. R. Civ. Proc. 12 (f), this court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The use of "up the wazoo" and "hillbillies" in Plaintiff's affidavit, while less than pertinent, are by no means scandalous or offensive. Plaintiff is an inmate incarcerated in a medium security prison. A prison is certainly no Victorian parlor; strong language far more offensive than the terms sub judice is commonplace. To strike as offensive the relatively mild language employed here is not essential to the preservation of the dignity of these proceedings. Accordingly, the motion to

---

[1] Plaintiff explains in his affidavit that he filed numerous administrative remedy complaints, illustrating the vastness of the number as "up the wazoo".

[2] Plaintiff describes persons living in North Dakota as hillbillies in an apparent effort to illustrate his rationale for declining a transfer to that state.

strike these terms will be denied.

The paragraphs of plaintiff's affidavit that defendants assert contain hearsay are as follows: ¶¶ 6– 11; 15, 17, 21, 31, 32, 38, 44, 48, 51, 52, 54, and 62– 64.  Some of these paragraphs may contain inadmissible testimony.  Others, however, refer to statements that may fall into the hearsay exception for admissions by a party opponent.  I do not believe it is in the interest of the efficient management of this litigation to parse the various statements at this time.  Therefore, I will deny the motion to strike in its entirety, with leave for defendants to raise at a later time an objection to any of plaintiff's evidence that defendants allege to be hearsay.

## Motion for Summary Judgment

### Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable

inferences in favor of and construe the facts in the light most favorable to the non-moving party. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence.  *Anderson*, 477 U.S. at 256.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324.  However, "'a mere scintilla of evidence is not enough to create a fact issue.'"   *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

## Analysis

### Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to plaintiff's allegations of failure to protect from violence and excessive force.

"[A]n inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise properly raised by the defendant." *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F. 3d 674, 681 (4th Cir. 2005). Defendants in the instant case have properly raised the exhaustion issue and plaintiff has responded accordingly. Defendants contend that plaintiff has not exhausted administrative remedies with respect to the issues raised in this complaint. Paper No. 74. In support of their contention, defendants submit the declaration of Raymond Willis, Administrative Remedy Procedure (ARP) Coordinator at WCI. *Id*. at Ex. 1. Sergeant Willis submits a record reflecting the dates plaintiff filed ARPs, followed by a brief description of either the issue raised by plaintiff or the reason for dismissal. *Id*. at p. 2. The actual ARPs with written responses are not submitted and this court has no way of discerning the content of each complaint filed by

plaintiff. Several of the listed ARPs are followed by a notation that they were untimely and one reflects that it was administratively dismissed. *Id*. The submitted evidence establishes little to nothing regarding what information plaintiff conveyed to prison staff regarding his dilemma. Equally lacking in probative value is the submitted declaration of Marvin Robbins, Executive Director of the Inmate Grievance Office. *Id*. at Ex. 2. The only thing established by the declaration relevant to the exhaustion issue in this case is that plaintiff filed five grievances with the IGO since 1998, two of which were filed this year pertaining to classification issues. *Id*. at p. 3. Left to the imagination is what aspect of classification (e.g. transfer, custody, security or housing assignment[3]) is raised by plaintiff in those grievances.

   In contrast, plaintiff avers that he has filed numerous ARPs regarding each of the alleged incidents where his life was threatened or he was assaulted. Paper No. 72 at Ex. A. While plaintiff has not provided documentary evidence to establish that he has filed the ARPs he claims to have filed, that failure does not contradict his claim. Defendants, some of whom are the intended recipients of plaintiff's ARPs, are the natural custodians of those documents. Moreover, the failure to exhaust administrative remedies must be properly raised and established by defendants as an affirmative defense. *Anderson*, 407 F. 3d at 681 *citing Ray v. Kertes*, 285 F. 3d 287, 295 (3rd Cir. 2002). There has been no clear showing by defendants in this case that Plaintiff has failed to exhaust administrative remedies.

---

[3] Notably, the characterization of plaintiff's pending grievances as involving a classification issue does not foreclose the possibility that at least some aspect of the issues raised in this case are included in those grievances.

<u>Eighth Amendment Claim</u>

A.      Failure to Protect

In order to prevail on his claim that defendants have failed to protect him from the violent acts of other inmates, plaintiff must establish that defendants exhibited deliberate or callous indifference to a specific known risk of harm. *Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency.  Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994) (citations omitted).  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id* at 837.  *See also Rich v. Bruce*, 129 F. 3d 336, 339–40 (4th Cir. 1997).

Plaintiff first alleges that his life was threatened while he was an inmate at RCI because he provided information to correctional staff regarding an impending riot.  There is no allegation that the threats resulted in actual harm to plaintiff.  In response to those alleged threats, plaintiff was transferred to MCTC.  While at MCTC, plaintiff was again threatened by inmate Coleman, but the threat did not result in actual harm to plaintiff, and he was placed on administrative segregation at MCTC after he reported the threat to staff.  His assignment to administrative segregation was reviewed by a case management team which resulted in a recommendation for

9

removal because "we do not have any proof that Coleman is an enemy."[4]  Paper No. 42 at Ex. 4.  The case management team's recommendation was disapproved by the warden and plaintiff was transferred to WCI to be placed on long term protective custody.  *Id*.  Defendants are entitled to summary judgement with respect to these allegations involving RCI and MCTC personnel.  The undisputed evidence establishes that plaintiff suffered no harm and that defendants, once they were aware of a threat to plaintiff's physical safety, appropriately placed him on protective custody status.

Plaintiff claims that upon his arrival at WCI he was attacked by Michael Powell[5], an inmate who is listed as an enemy.  Defendants admit that Powell is a documented enemy of plaintiff, but deny that plaintiff had any contact with Powell at WCI.  Paper No. 42 at Ex. 1, p. 2.  Defendants assert that "[o]fficial records of traffic history indicate inmate Powell had no contact with Mr. Hicks, as they are documented enemies.  There were no indications of an assault on Mr. Hicks by Mr. Powell."  *Id*.  Notably absent from the record in this case are the official records of traffic history upon which defendants rely for this assertion.  It is unclear whether defendants are alleging that the two men were never in the same prison at the same time or that they were never assigned to the same housing unit at the same time.

Plaintiff has also failed to produce any documentary evidence establishing that he

---

[4] Coleman was interviewed as part of an investigative report done to determine if plaintiff should be assigned to administrative segregation.  Paper No. 42 at Ex. 4.  During that interview, Coleman apparently claimed that he had no dealings with plaintiff either at the Maryland Penitentiary or at MCTC. *Id*

[5] Plaintiff claims that he was hit with something like a baseball bat and lost consciousness for six to seven hours as a result.  Paper No. 72 at Ex. A, p. 4.  The assault allegedly occurred shortly after his arrival at WCI on December 5, 2001.  *Id*.

reported this assault to any correctional official at the time it occurred.[6] Plaintiff has alleged, however, that many of his written reports of incidents were destroyed by defendants. Also absent from the record are any medical reports contemporary with the alleged assault, in spite of the fact that plaintiff alleges he was unconscious for six to seven hours after the assault and that he woke up in the infirmary. Paper No. 72 at p. 4. Simply put, there is no evidence other than plaintiff's allegation establishing either party's version of the facts with respect to this alleged assault. As the non-moving party, plaintiff is entitled to have the evidence viewed in a light favorable to him. Defendants' motion shall be denied with respect to this claim.

Plaintiff alleges that he was assaulted by inmate Melvin McAllister, and that McAllister's assault was aided by the actions of Defendant Broadwater, who left plaintiff's cell door open longer than normal so that he could gain entrance into plaintiff's cell. Paper No. 72 at Ex. A, p.6. Plaintiff claims that McAllister tried to stab him but he was able to fend him off. *Id*. Broadwater denies allowing McAllister access to plaintiff's cell and alleges that the assault never took place. Paper No. 42 at Ex. 1. Defendants rely on the absence of any official report regarding the incident as evidence that the assault did not take place. Plaintiff alleges, however, that his written note reporting the assault was destroyed by Broadwater. Paper No. 72 at Ex. A, p. 6. Plaintiff does not describe any injury resulting from the assault, but claims that he made a request to be taken to the hospital after the assault occurred. *Id*. Plaintiff's failure to allege any specific injury resulting from the assault by McAllister, or to forecast any evidence establishing that he was in fact injured, is fatal to the claim. *Farmer,* 511 U.S. at 834. Defendants are

---

[6] Plaintiff submitted some of the ARPs he filed regarding the conditions under which he has been confined, all of which were filed and dated, 2003. Paper No. 3.

entitled to summary judgement with respect to this claim.

Plaintiff claims that he was again assaulted at WCI while he was in the bathroom. He claims another inmate came from behind and stabbed him in the back of the neck. Paper No. 72 at Ex. A, p. 7. He further claims that he was taken to the infirmary for medical attention shortly after the assault took place. *Id.* at p. 8. Defendants do not deny that an incident occurred where plaintiff was injured. Paper No. 33 at Ex. A-3-- A-4.

Plaintiff's housing assignment was reviewed by a classification team shortly after the assault took place. Although the classification team found plaintiff's account to be less than credible, the decision was made to assign plaintiff to protective custody and remove him from administrative segregation[7]. *Id*. Plaintiff's request to be transferred to another institution was denied based on the view that he has a history of attempting to manipulate staff to provide him with desired housing assignments by reporting assaults by other inmates. *Id*. This court finds that there are genuine disputes of material fact with respect to this claim, precluding summary judgment in favor of defendants based on the current record before the court. Matters requiring a decision based on witness credibility are not appropriate for disposition on summary judgment.

B.   Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look

---

[7] The classification team permitted plaintiff to explain the assault and noted that plaintiff could not identify the race of his assailant even though he claimed his assailant placed his hand over his mouth. Paper No. 33 at Ex. A-4. They further noted that plaintiff claimed he could not identify his assailant by his voice even though the protective custody housing unit holds the fewest number of inmates than any other housing unit in the prison. *Id*.

at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U. S. 312, 321 (1986).

Plaintiff alleges that he was dumped out of his wheelchair by Defendant Swanger. Paper No. 72 at p. 7. He claims this act was witnessed by two other inmates, neither of whom have provided a statement to that effect for this case. Swanger denies the assault took place. Paper No. 42 at Ex. 7. While there is no allegation that plaintiff suffered an injury as a result of being pushed from his wheelchair, the absence of an injury where the alleged assault was purely malicious is not necessarily fatal to the claim. In order to determine whether this assault took place, a credibility determination must be made. Consequently, this court finds that there exists a genuine dispute of material fact with respect to this allegation that precludes summary judgment on this record.

## Conclusion

Plaintiff's Motions for Injunctive Relief will be denied without prejudice. Defendants' Motion to Strike shall be granted in part and denied in part, as set forth above. In light of the absence of record evidence to support a finding that plaintiff has failed to exhaust administrative remedies, and the absence of any medical evidence supporting or refuting the alleged assaults or the resulting injuries to plaintiff, defendants' Motion for Summary Judgment will be denied in part. The motion will, however, be granted with respect to the threats made to plaintiff while he was incarcerated at RCI and MCTC and the McAllister assault. A scheduling order providing for discovery by the parties will be issued and the parties will be provided an additional

opportunity to file dispositive motions addressing the evidentiary matters raised herein.   A separate Order follows.



<u>September 22, 2005</u>                          /s/_____
Date                                              J. Frederick Motz
                                                  United States District Judge

14